Our next case is number 242089, mCom IP v. City National Bank of Florida. Okay, Mr. Ramey. Yes, sir. Bill Ramey for the plaintiff, mCom IP, LLC. If it pleases the court, may I begin. Your Honor, this case was dismissed not because the plaintiff failed to give notice, but because the district court required proof. It required proof of both infringement and validity at the pleading stage. This is not Rule 8, what it requires. It's not what this court's case law requires. As under Twombly, Iqbal, Bot 8, and Dist Disease, this complaint was more than sufficient. The dismissal and the sanctions that followed cannot stand on the record before this court. So can I focus on, I'd like to focus for a minute at least on the validity piece of it. So it seems to me the district court, quite plainly I would say, did hold Claim 17 as well as the other three claims that are no longer, that you're not pressing here on appeal, to be invalid. It did so not on the 101 ground, which was separately placed before the court in the defendant's motion to dismiss, but rather on obviousness on the ground that these four claims were not patentably distinct from what had already been held unpatentable by the board. I think, tell me if I'm wrong, that your only argument about validity in the blue brief is that the district court did not hold Claim 17 invalid. You don't otherwise say, if it did, here's why it was wrong. We did in fact say that the standard for holding a claim invalid was clear and convincing. I'm confused. I'm a little confused. Was there any briefing on obviousness or did that arise only in connection with the attorney's fees? That, in my belief, arrived only in connection with the attorney's fees. It wasn't clear to us that there was a proper validity challenge. I'm sorry, their motion to dismiss has six or seven pages on 103, why these claims are not patentably distinct from the claims held, canceled in the IPR. Right, and that becomes a clear and convincing standard. That's evidentiary. Judge Dyke asked if this came up only in attorney's fees or in the 12v6 motion. It was part of the 12v6 motion. Yes, Your Honor, pardon me, I misunderstood the question. He didn't rule in the 12v6 motion on obviousness, right? Your Honor, that was somewhat confusing to me. What he held is not direct to patentable subject matter. He held in his order on the 12v6. Right, and he was using that phrase, which we tend to use a variant of it in talking about 101, about eligible subject matter, but that phrase was used throughout the six or seven pages of the 103 discussion in the motion to dismiss to refer specifically to obviousness. That is, the subject matter of the claims are not patentable because they are obvious. The reason they're obvious is that they're not patentably distinct from the subject matter of the claims canceled. Yes, Your Honor, we would say that that's a factual question, because what's obvious or not, that's a factual question. I'm sorry, I'm still confused. I understand that there was briefing on the obviousness question, but I didn't understand, maybe I'm wrong about this, that the district court on the 12v6 motion on the merits rendered an obviousness decision. I saw him only as addressing the obviousness question in connection with attorney's fees. Am I mistaken about that? I think the court did on the 12v6 say that the claims weren't addressed to patentable subject matter, but it didn't do it. It's hard for me to tell whether it was a declaration of invalidity, and that what it found is it found that the wasn't a challenging validity to the patent. That's why we briefed it as we did. However, in the motion for attorney's fees, the report and recommendation did go into that and say that the invalidation of the PTAB of the other independent claims is what made the case exceptional. And we think that that was a core misunderstanding of the district court. The sanctions under the report and recommendation, and I'll focus on the report and recommendation mainly because Judge Scola actually adopted the report and recommendation in its entirety, so that's where I think the we had a pleading. Is there any argument that's any different between this case and the previous case insofar as we're talking about the adequacy of the pleading for infringement? We're talking now about attorney's fees. Is that the only different between the two cases? We think that all of our cases we approach to provide the best claim trust that we can. Answer my question. I mean, we started talking about attorney's fees. Insofar as the pleading of infringement is concerned, is this case the same as the previous case? Different facts, different reasonable inferences we try to draw, but yes. But the big difference is if there's the sanctions bolted on to the end that we think were improper. But if we go down to the pleading standard, here we did tie into more of a common point of control, tried to give more detail, which we always try to do because we had more available from city nationals website. Where is that? Yes, your honor. So if you go that starts on appendix page 308, and actually it starts on page 306, your honor. But we talk about the preamble on 308 explaining how the unified banking system of city national works. And then we continue on through providing examples what these different terms might mean to one of ordinary skill in the art to try to, and then examples from the patent of what we're referring to, to specifically allege. We always are trying to improve our claim charts for across cases. But if we get down to the common point of control for claim 17, after taking in the building of the unified banking platform from appendix 304 down to appendix 327. I'm sorry, but just on the claim 17 common control point, that's page 329? 328 and 329, your honor. Yes, your honor. Right. And in what way do you think that that is more concrete or whatever the right term is than counterpart pages as to HSBC? Well, because we contend that the system of city national provides a common point of control. So here, if we didn't do it before, and I think maybe the court might have indicated that we didn't make the allegation that there was a common point of control. And with reference to claim 17 here, specifically at appendix page 329, your honor, we do right up there in the explanation to the down below the claim element. The claim element's up top and then right below there, we explain a common point of functionality. And then we explain how we define that and where we get that from. And then we provide examples from the URLs from city national's direct banking. So we do provide this detail here. So we specifically allege common point of control in this one. And then, again, we provided appendix 331, Judge Albright's opinion, to show the court, you know, to provide what some other courts have ruled on these claims about the common point of control. But here, we go back to, if we go to switch briefly to the sanctions issues, I think are very important for this case. The report and recommendation actually relied solely on the dismissal under 12b-6 as a supporting exceptionality, the PTAB invalidation of other claims, and generalized litigation history. But it didn't actually perform any analysis on the actual strength of claim 17 or litigation conduct in this case. We would say that octane fitness is a totality of the circumstances, but the totality of the circumstances in this case, we'd suggest that the R&R was too generalized, that it didn't provide that sufficient evidence for this court's appropriate appellate review. We'd ask for the court to reverse on that ground alone. Losing on a motion to desist doesn't automatically make a case exceptional, but that's what the R&R treated it as. Otherwise, every dismissed patent case would be automatically exceptional under 285. The R&R specifically actually states that one of the reasons for exceptionality is we failed to satisfy rule 12b-6, and therefore the case is exceptional. That we think that that's just wrong on the law. It's not a penalty for losing. That's in the case law everywhere from this court and others. But there was no finding, no proper finding, that the case was objectively unreasonable or that there was an inadequate pre-suit investigation. What about on the license aspect? Yes, Your Honor. So the license aspect is something very important to the case. If we went to appendix page 749 to 750, this is what they produced as evidence of the license. Just to be clear, this was a license you granted, so you should have had that license. No, Your Honor. If you look at 749 to 750, appendix page... I forget what's secret here, but this is a license from you to, you want to say it or should I? It's NCR. To NCR, okay. So it's your license. How could you not have it? NCR, we sued City National. We didn't sue NCR. We begged them to provide us anything with the license. We wrote to NCR to ask for it. NCR wouldn't communicate with us about whether they had a license with City National. You could go to appendix page 675 to 688. I'm sorry. There would be two steps, right? You had a license with NCR, and then, so you could presumably read it and figure out whether, for example, it provided a license to NCR's customers. Now, NCR, you would not have a customer list necessarily between the NCR, a list of NCR's customers to see if it included City National, but you would have the license. Well, we did have the license. What we requested of City National was to contact NCR. We had done this with a couple other defendants, had them send us a letter to say that they were licensed by NCR. No letter ever came. In fact, City National supposedly issued a subpoena to NCR, but no license was ever produced from it except for our license, MCOM's license with NCR. There was no adjudication of whether or not it was a license, right? Yes, Your Honor. We tried everything we could to work with the opposing side. We actually don't want to pursue lawsuits with someone's license because it wasted everyone's time, so we tried. But what they produced as an evidence of license is 749-750 as a redacted quote page that was never accepted. The terms were never accepted, so we don't even know that they purchased NCR. If you go to appendix page 675-688, that's the declaration of Perry Landers, one of our technical experts. He searched the code of the City National's bank on what was and couldn't find NCR referenced anywhere, which is contrary to what normally happens when NCR has a licensed person. So we went out of our way to try to prove that they had a license also, but we couldn't, and we asked them to produce one, and there was never adjudication on that. Just to be clear about the terminology, when you say you asked them, you asked them, being City to produce a license, you don't mean the license that you provided to NCR. You mean the second stage, a license that NCR provided to City. It even just limited, Your Honor, to a letter from NCR saying, hey, these people are our customers for the system that you accuse of infringing their license under this, and that never came. We begged them for that. Now, I'm in my time. Unless the Court has something more, I'd like to reserve the final. We'll give you two minutes for rebuttal. Thank you, Your Honor. Mr. Santucci. Good morning. May it please the Court, Michael Santucci from 500 Live, Sal Fazio with me from my firm as well. We represent City National Bank of Florida. Okay, so I have some real problems with the attorney's fees imposition here because I'm not sure that the record supports some of the grounds. That the district court adopted for imposing attorney's fees. Let's take, for example, the efforts to coerce low-value settlements. I've looked at our cases on that. I just don't see the proof here that that was what was going on here. So help me on that. And again, with respect to the license, I mean, I don't understand how they're supposed to conduct an investigation of an affirmative defense. I mean, if they knew that the affirmative defense existed, that would be one thing. But I don't know why they're supposed to investigate an affirmative defense before bringing suit. Those are a couple of examples. There are other issues here also. Help me understand why some of these considerations weren't inappropriate. I'll work backwards, Your Honor. With regard to the license, it was in a settlement agreement, yes, between NCR and . . . We didn't even sit here today. We didn't even know whether it was a license or not for your client, right? Well, the court in its . . . No, answer the question. We don't know one way or the other whether it was a license for your client. That's correct, Your Honor, because . . . How can you impose sanctions for failing to investigate something where we don't even know what the investigation would have produced? Because this is what the district court reasoned. It was brought up in the context of the attorney's fees motion. There was no finding on an affirmative defense of a license or a settlement of a claim that is absolutely true, Your Honor. But how this arose is we served a request to produce on MCOM, asked for documents which would have included such a settlement agreement or license. Nothing was produced. We served a subpoena due to TCOM on our vendor, NCR, and they finally produced it. We learned that it was Mr. Ramey's firm that negotiated it. How is it appropriate to sanction somebody for failing to investigate an affirmative defense when there's been no finding that such an investigation would have shown that the lawsuit was without merit? I think in the report and recommendation, the magistrate judge was aware of the procedural history of the case and knew that this came from a subpoena due to TCOM from our vendor, which . . . I'm not hearing an answer to my question. I'm sorry, Your Honor. Please have the opportunity. How is it you can sanction somebody for not making an investigation when you don't know that the investigation would have shown that the lawsuit was meritless? It wasn't . . . what the court . . . what I think the court reasoned is that upon learning and receiving a copy of the document that was in his own files, they should have put breaks on this case and not then started making more settlement demands. They could have taken a voluntary dismissal without prejudice. They could have taken time to review this. Instead, we're meeting deadlines and spending money. Meeting deadlines and spending money, the case went on for months more. So this was brought up in the context of the sanctions, not . . . Let's turn to the coercive low-value settlements. Where's the proof of that? They sued a lot of people. Where's the low-value settlements? Yes. The court took the representations of the parties that there were low-value settlements, and the court looked at other cases in which . . . Representations. What representations? The representations of the parties in their briefs, but the courts did . . . Where? In the briefing below. Where? In the motion. Which representations? Did they represent that they coerced low-value settlements? I doubt it. Is that what you're saying? They responded to our allegations . . . Where's the proof? Well, the actual settlement offers are not in the record, Your Honor. That is correct. But the court did look at . . . They conceded that they coerced low-value settlements? What they said is they argued back that coercing or asking for low-value settlements is not in and of itself bad faith. It's not in and of itself sanctionable. But the district court did look to other cases of HSBC and of the firm that represents them as to their litigation tactics. It was brought up in that. Where's the evidence that they got low-value settlements in these other cases? There was a case cited in which I believe Mr. Ramey was sanctioned previously, and it was recited in that. It's not in the . . . The settlement offers are not in the record of our case. That is absolutely correct, Your Honor. So what I would like to do is answer a question I think of . . . It was Judge Taranto, which I believe Judge Dyke, you also touched upon. This case is materially similar to the HSBC case in two respects. We also have this same common point of control problem in the pleading. We also have the problem of pleading an infringing system that the financial institution employs in a plausible way. Those two cases are the same, but we don't even have to get to that in our case because the first reason the court dismissed this complaint with prejudice and the first time it struck it for this reason is because the 11th Circuit despises shotgun pleadings. We have very tough case law in our 11th Circuit. What's the definition of a shotgun pleading? There are four that were set forth in the case law that we agree upon. I think this is a case from . . . You don't need to tell me what the authority is. Tell me what it means. Yes. The shotgun pleading in this case was this type of shotgun pleading. You keep assuming that I know what the word shotgun in the phrase shotgun pleading means. That's what I'm asking you. I don't. Tell me what it means. Understood. Okay. There are four. It means it's not specific. The original problem was shotgun pleading because they were in a single count alleging direct infringement and induced infringement, things like that, right? That is the type that is in our case. Yes. And they stripped that out of the amended complaint. So where's the shotgun pleading in the amended complaint? Well, in the amended complaint, they pled three theories of liability, which they refer to as causes of action, direct infringement, indirect, contributory, and in one count. And in the Eleventh Circuit case law, that is not permitted. If you have different theories of liability, you must . . . Did they separate them into different counts? No, they did not. There were three paragraphs. They're separate paragraphs, but they're in the same single infringement count. Where is this? Where in the record? It is at page . . . Can I have the amended complaint? It's in the sole infringement . . . It's in the infringement count, Your Honor. And it refers to various types of infringement in the one count. Okay. It's appendix 270 to 286, Your Honor. 270 to 286 is the first amended complaint. Yeah, but where . . . Okay, where's the shotgun pleading aspect? In the specific count section. There's only one count. Is that right? Correct. That runs from 271 to 284? Correct. And there are references to three distinct . . . theories of liability in that one count. Okay. And you're saying that that, putting it in a single count, even if they're separated into separate theories of liability, not in the same paragraphs of the complaint, that's a shotgun pleading? Under Eleventh Circuit law, yes. And the procedure . . . What case tells us that? Okay. That is . . . One case is Vibe Micro Inc. v. Chabonettes at 878 Fed 3rd 1291. It's an Eleventh Circuit case, and it says that the court must first, which it did, sua sponte, give one chance to re-plead in a way that does not constitute a shotgun pleading. After that opportunity, if the party still neither filed a complaint pleading it . . . Just to be clear, I don't think the question was about how many opportunities. The question, at least the question I'm interested in an answer to is, what case law says that this kind of single count that, within it, clearly delineates several different highly related wrongs, but clearly delineates them, would constitute an impermissible so-called shotgun pleading? There's more than one case that were cited, Your Honor, by us. It's the Vibe Micro case is one of them. And the other is right at page . . . of the . . . of MCOM's reply, where it discusses the four different types of pleadings the Eleventh Circuit calls shotgun pleadings, which includes that, a description of that kind, where several . . . What case says putting them under a single count is impermissible if they're separated into different paragraphs with distinct theories? Thank you. Your Honor, it's the Whelan case. Whelan v. Palm Beach City Sheriff's Office, 792 Fed Third, 1313, 11th Circuit. And it defines four different categories of shotgun pleadings, the third of which is complaints that fail to separate each cause of action into a different count. And that was cited by MCOM in their reply, page one and two. What would be the harm that would flow from that? Because different theories of infringement require different factual allegations to support them. One might require knowledge, one does not. And this case law applies obviously not just to patent law, but in our case, that's why it would make a difference. This seems to be saying that the deficiency is not labeling them separate counts, as opposed to not separating them into distinct paragraphs of the complaint, which they did. Right. The sin here is not... Is labeling them separate counts. Correct. Not separating them into separate counts, with separate facts supporting each different theory of liability. And the district court gave them one opportunity. They did the same thing the second time. And they were warned under threat of sanction if they were to fail to comply with the order striking. And that was one of the bases for the sanctions order under 1927. If some of the bases cited by the district court for finding the case exceptional, if we were to conclude that the ones that we've talked about are unsupported, what would we do? I think there's enough overlap. Sometimes it's been referred to six different reasons. Some called it eight different reasons in this case. There was plenty of support for each award. So I don't think anyone... The district court relied on impermissible grounds. We can't just affirm, right? Well, Your Honor, you can because there are other reasons. There's a variety of reasons that the court gave. Did the district court say that these were independent reasons for awarding sanctions? The court looked at it in the totality of the circumstances. Okay, so part of the circumstances were not right. Yes. We have to send it back to have them reconsider the totality of the circumstances using the right circumstances? Well, certainly not. Yes or no? No as to 1927. As to 285, as to the award of fees under exceptional, I would also say no because there is enough there. Even if the court ignores whether or not there was the license applied to our client or not. Even if the court ignores the pre-suit investigation. There was an admission at the fee hearing by counsel of record for MCOM that she did fail to independently investigate this case and relied completely upon Mr. Ramey who was not of record and not admitted in the case but was acting in a lead counsel capacity. The report and recommendation makes it very clear that that was somewhat shocking to the court that the attorney below would... What's the basis for your... I think you answered Judge Dyke's question by saying first 1927 is one thing. 285 is another. 285 has this totality of the circumstances. What's the basis for your separating out 1927? In this case, what's the basis? If we were to conclude that the 285 exceptional case determination had to be vacated and with a remand for reconsideration? Because in the order adopting the report and recommendation on that part of it, the court stated that these factors... Okay, where are you reading from? It is appendix... First of all, the order is appendix one through four. That's the district court's own order rejecting the objections to the report and recommendation. Yes, Your Honor, and adopting the report and recommendation. So it is at the bottom of appendix three. Where the court said this caused vexation and unnecessary litigation, thus warranting 1927 sanctions. The analysis seems in this section that the court believed that each one of these alleged violations that it mentions was itself sanctionable and the court limited... This paragraph talks about, at least in part, failing to investigate whether the MCOM license to NCR carried forward to your client. And I thought earlier in the argument you stated in response to Judge Dyke's question that we still do not know whether your client in fact had coverage from NCR. So how could one possibly say the failure to investigate that caused unnecessary litigation with reference to the license? I respectfully disagree with the premise of your question, Your Honor, and here's why. At this time, the court was operating, and it was Your Honor who asked Mr. Ramey to clarify today as to whether he's arguing that there is no license, because that is what it sounds like throughout this whole case, or whether or not there was a license and the real issue is whether or not it applies to our client, Citi National Bank. He just clarified that here, but that is not evident from his arguments. So at the hearing on the sanctions, the court finally ordered us to file under seal this confidential settlement and license agreement, because up until that time... Between MCOM and NCR? Yes. Okay. Yes. So I think what's underlying a lot of this... Yes, sir. And is your invocation of that, that his client gave NCR a license to practice the patent when they sold you something, that even without anything but a sale under exhaustion doctrine, you're free and clear? No, it's because of the specific release language in the settlement agreement that it applies to NCR's customers. Okay, but it was not proven or... This is part of what I'm confused about. Is there still an unadjudicated question whether your client was a customer subject to that language in this case? Yes, Your Honor, because we never got that far. Yes. Oh, well that... Yes, it is unadjudicated. You are correct, because we never got that far. But the court was operating under the question, was trying to determine the question of whether there was even a license, because it wasn't part of the record, because we respected the confidentiality of the document. And then it took us all the way to the hearing on the sanctions before the court said, okay, go ahead and file it under seal. All along, MCOM is arguing that there is no license, which is somewhat... It required clarification, let's just say that, of Judge Toronto at that point. But each one of these, back to my point, each one of these grounds was itself worthy of sanction. And the court did limit its award to only those fees that were incurred from the first amended complaint forward to the dismissal. And I am out of time, Your Honor, so if there are no more questions. Okay, thank you. We're asking for the court to affirm both orders, the order of dismissal and the order of fees and sanctions. Okay, Mr. Ramey. Two minutes, Your Honor. Thank you. Briefly to address, if I might, the shotgun pleading issue. We, if you go to appendix page 271 and 272, we don't put in one count. We, in fact, have a section titled infringement of the 508 patent. And then we list in separate paragraphs the allegations for direct infringement. That's appendix 271, 272. Induced infringement, appendix 273, separate paragraph, so different facts. And then contributory infringement, 273 to 274. Again, different facts. We don't rely on facts from a previous part of the pleading. So we do think we didn't do a shotgun pleading, even under 11th Circuit standards in this one, but definitely not under Rule 8 and what this court requires for pleading standards. Lastly, I wanted to, if I might, Your Honor, spend a little bit of time on my local counsel on the section 1927. And they must fail as a matter of law. Because the R&R doesn't satisfy the three required elements. There's no unreasonable vexatious conduct that's established by the report and recommendation, nor by the district court's adoption of that order. There's no multiplication of the proceedings. As we've talked about in great detail, we tried to get to the bottom of what the district court appeared, the license issue, whether or not there was a license that would, in fact, inure to NCR's benefit. We went out of our way, and we're always open to it. And then there's no casual link to the excess cost. The first amendment complaint doesn't automatically delineate when something became unreasonable. And there was no finding by the district court that that, or the R&R or the district court, that that's when it became unreasonable. What the record actually shows, Your Honors, is a single complaint. Then the judge given us permission to file an amended complaint to instruct us on what he wanted to see differently. We went back, we substantially modified that complaint, tried to address everything the district court brought up in his word dismissing the case, then presented a first amendment complaint. Does the Wayland case that your friend on the other side cited from page, which is from I think he says, it says that what's required is putting different causes of action into separate counts, not just into separate paragraphs. What it says is you can't file and have within the same count rely back on evidence from the previous ones. So here we didn't do that. You can't incorporate by reference. Pardon me, I was having a slight issue there. You can't incorporate by reference preceding information from other paragraphs. We specifically didn't do that here. I'm looking at the case right now. It was my quick read. This is one we cited back in our responsive briefing as well. But what it's saying is you can't try to incorporate by reference preceding paragraphs. That's what's making a shotgun pleading in essence. There are four listed, but here we went out of our way to put each of ours in separate counts, if you would. They're just separate paragraphs, not delineated as counts. We don't delineate any particular paragraph as a count. More fundamentally, I'm out of time, but if I could get to spend just three more seconds. There was no bad faith that would be subject to 1927, and the report and recommendation didn't find it. So we'd asked this court either allow the case to go to trial, finding the complaint sufficient, or allow us the chance to amend, because we did a good faith amendment, and then two, to vacate the sanctions under 285 and the sanctions under 1927 if there are any inherent power of the court. We'd ask the court to reverse those. Thank you very much. Thank you. Thank both counsel. The case is submitted.